## KEAR *v.* STATE.

Opinion delivered October 21, 1907.

INFANCY—PRESUMPTION AS TO INCAPACITY TO COMMIT CRIME.—The presumption that an infant between twelve and fourteen years of age, accused of murder, was incapable of crime is not overcome by a mere scintilla of evidence that he was conscious that he was doing wrong when he fired the fatal shot.

Appeal from Sebastian Circuit Court; *Daniel Hon,* Judge; reversed.

### STATEMENT BY THE COURT.

Appellant, a boy little over thirteen and a half years old, shot and killed a negro boy about the same age. They lived on adjoining farms. Appellant was convicted of murder in the second degree, his punishment was fixed at five years in the penitentiary, and he appeals.

The killing was done sometime early in the morning, and the sheriff arrested appellant about one o'clock P. M. When the sheriff first arrested appellant, he denied doing the killing. Then, after his father said to the sheriff: "You need not ask the boy anything; he will not tell you anything; you can not get anything out of him; I told the boy to take the gun and go down there and kill him," appellant told all about it. He said he shot the negro because he had been over in the field bothering him; said the negro came over there abusing him, and had a shotgun and an ax with him, and he went to the house and got the gun and came back down there and shot him. Leonard Caltharp, the boy who was killed, was just outside of the field in the lane, and appellant was in his father's field at the time of the shooting, about 220 steps from deceased.

Witness, Morrow, who was with the sheriff at the time the arrest was made, gave the following account of what appellant did and said: "The boy got up behind me (witness was horse back), and after we left the house (appellant's), and before we got to the negro's house, I asked him (appellant) what he did it for, and what he did it with, and he said he did not have anything to do with it, that he did not know anything about it. Rode on further, and Norris (sheriff) got down and looked at the negro. Then we started on, and got nearly back to the place where the

shooting was done, and I questioned the boy again, and so did Norris, and Kear, the father of defendant, said: 'There is no use asking that boy anything; the boy is not to blame; I told him to do it.' The boy then turned around, and said: 'Now, I will tell you the whole thing, just how it happened.' Then he pointed out the rock pile in the field, something about 175 or 200 yards, and said he stood there, and the negro was standing in the lane; said that he missed him the first shot; that the negro was going through the wire fence out of the field the first shot, but that he got him the next; that the negro was going like hell the second shot.

This witness said that appellant first gave as his reason for shooting the negro boy that he had been over in the field bothering him (appellant), and then he said his father told him to get the gun and kill him. In some of the conversations, the defendant told the witness that he did not intend to kill the negro, but wanted to shoot him in the heel to see him jump. The defendant asked the witness about what witness thought it would cost him, and how long it would take him to get out of it.

Witness was asked this question: "When you talked to the boy, did he seem to realize what he had done or what the punishment would be?" and witness answered: "He asked me what I thought about it, but did not seem to realize it himself." The witness further testified that defendant said that they (the Caltharps) would have to walk the chalk line, or he would get them all; said if they bothered him he would get them all; would get old Bill Caltharp if he fooled around him."

Another witness testified that he asked appellant in jail why he shot the little negro boy, and he said: "Pa told me to." He told his Pa that the negroes had been over in the field, and his Pa told him to go down and run them out or kill them. Witness proceeds as follows: "I said: 'Did you run them out, or kill them?' He says: 'Yes, I taken two shots at them with the target first.' I said, 'Did you hit him?' and he said, 'No'; that the target cartridge did not cost much, 'and then I got the rifle, and fired one shot at him, but didn't take much pains, but the next shot, I took particular pains,' and I said: 'Did you hit him?' and he said, 'Yes.' And I said: 'How do you know you hit him?' And he says: 'I heard him squeal.' I said: 'Don't you know it is a penitentiary or hangable offense to kill a negro in Arkansas,' and

he says, 'Oh you are just trying to scare me.' " Witness continues : "I had no acquaintance with him till after the shooting occurred. He said his father told him to run the negro out of the field or kill him. He did not seem to be alarmed in talking to me about it ; laughed all the time. He did not seem to be uneasy about it ; laughed about it ; seemed to regard it as a joke."

This was all the testimony on the part of the State tending to throw any light on the mental capacity of the appellant at the time of the killing. On behalf of the appellant, there was evidence tending to show that he was a weak-minded child ; had been puny from his birth, and at three years of age had spinal meningitis, which left him of weak mind ; that he was addicted to somnambulism, and was morose, apathetic and suspicious.

The evidence conclusively showed that appellant was under fourteen years of age when the killing took place.

*T. B. Pryor,* for appellant.

1.  The court erred in charging the jury, in substance, that if they convicted the defendant of any degree of homicide less than murder in the first degree, the punishment would be imprisonment in the penitentiary, and that, being under the age of eighteen years, defendant would be transferred from the penitentiary to the reform school. There is nothing in the act (of 1905, p. 515, § 6) authorizing the court to call attention to the jury to the establishment of the reform school.

2.  It is conclusively shown that appellant was only thirteen years of age. The law presumes that a boy thirteen years of age is incapable of committing a crime, and it devolves upon the State to show that he had mental capacity and intelligence enough to know right from wrong with reference to the crime with which he was charged. 72 Ark. 117.

*William F. Kirby,* Attorney General, and *Daniel Taylor,* assistant, for appellee.

1.  There was no prejudice in the court's stating to the jury that, upon conviction of a less degree of homicide than murder in the first degree, the appellant would be taken to the reform school. The establishment of the reform school for youthful criminals is a general law, with which the jury are presumed to be familiar.

2.  There is sufficient evidence upon which to base the con-

clusion that the appellant was mentally capable of committing the crime, and intelligent enough to understand the nature of the deed and to realize its consequences.

WOOD, J., (after stating the facts.)  In *Harrison v. State,* 72 Ark. 117, we said:

"The law presumed that a boy thirteen years of age is incapable of committing a crime, and it devolved on the State to show that he had mental capacity and intelligence enough to know right from wrong in reference to the offense with which he was charged.  In this the State failed, and the presumption of his incapacity, in the absence of such proof, must prevail.  In *Dove v. State,* 37 Ark. 261, it is said that 'when the accused is between the ages of 12 and 14, the common-law presumption still prevails that he or she is not *doli capax,* or capable of discerning between good and evil, until the contrary is affirmatively shown by the evidence.  No witness was examined as to the intelligence of appellant, or as to his knowledge of right and wrong, good and evil.' "

Measured by this rule, the evidence on the part of the State does not overcome the presumption that appellant was incapable of committing the crime  charged.  There must  be affirmative evidence of that kind by experts or those so intimately acquainted with his nature, habits, and disposition as to enable them to testify intelligently about them.  Or the facts and circumstances of the killing, and the conduct  of the defendant with  reference thereto, must show that the appellant at the time he did the killing had a guilty knowledge that he was doing wrong.  1 Bishop, New Cr. Law, § 368; *Rex v. Owen,* 4 Car. & P. 236; 4 Blackstone, Com. *23; Broom's Legal Maxims, 8th Ed. 316.

There is at most not more than a scintilla of evidence to show that appellant was conscious of the fact that he was doing wrong when he fired the fatal shot.  This is not sufficient to warrant his conviction.

The verdict is without evidence to support it, and the judgment for this reason is reversed, and the cause is remanded for new trial.